******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

KEITH WARZECHA *v.* USAA CASUALTY
INSURANCE COMPANY
(AC 43984)

Bright, C. J., and Cradle and Bishop, Js.

*Syllabus*

The plaintiff, K, a homeowner, was insured under a homeowners insurance
policy issued by the defendant insurance company. K was named as a
defendant in a separate action, in which it was alleged that K had stalked
and harassed a family, and the claims against K included, inter alia,
negligent infliction of emotional distress. K made a claim for coverage
relating to the separate action under the insurance policy, which the
defendant denied. Thereafter, K brought the present action against the
defendant claiming that the defendant had a duty to provide K with a
legal defense in the separate action and to indemnify. The trial court
determined that the count alleging negligent infliction of emotional dis-
tress against K in the separate action did not allege that a bodily injury
had occurred and that, pursuant to the terms of the insurance policy,
bodily injury did not include claims for purely mental injury. The trial
court granted the defendant's motion for summary judgment. On appeal,
K claimed that, in the separate action, the plaintiff's allegation that her
emotional distress was so severe that it could cause physical illness
was sufficient for the trial court to conclude that a bodily injury was
alleged to have been sustained and, therefore, K was entitled to coverage
pursuant to the terms of his policy. *Held* that the trial court did not err
in rendering summary judgment for the defendant: the complaint against
K did not allege actual physical illness or injury but was required to
allege that K's actions could have resulted in such in order to comply
with the pleading requirements for a claim for negligent infliction of
emotional distress, and, as the insurance policy explicitly excluded
purely mental injuries, this court was bound by that plain language
and could not read the policy differently to account for public policy
considerations, thus, pursuant to the terms of his insurance policy, K
was not entitled to coverage, and, accordingly, the defendant had neither
a duty to defend nor a duty to indemnify K.

Argued May 11—officially released July 27, 2021

*Procedural History*

Action, inter alia, to recover damages for breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of Hartford, where the
court, *Noble, J.*, granted the defendant's motion for
summary judgment and rendered judgment thereon,
from which the plaintiff appealed to this court.
*Affirmed.*

*Christopher P. Kriesen*, with whom, on the brief, was
*Emily Covey*, for the appellant (plaintiff).

*John W. Cannavino, Jr.*, with whom, on the brief,
was *Lawrence L. Connelli*, for the appellee (defendant).

*Opinion*

BRIGHT, C. J. The plaintiff, Keith Warzecha, appeals from the summary judgment rendered by the trial court, *Noble, J.*, in favor of the defendant, USAA Casualty Insurance Company, on the plaintiff's two count amended complaint, which alleged breach of contract and sought a declaratory judgment. On appeal, the plaintiff claims that the court erred in concluding that he was not entitled to liability coverage under the terms of his insurance policy. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In April, 2018, Cindy Watson brought a three count complaint against the plaintiff, alleging that he had "engaged in serial acts of surveillance, stalking, and harassment of [Watson] and her children, including taking photographs and videos of them and their home." At the time of the conduct alleged by Watson, the plaintiff was insured under a homeowners policy issued by the defendant which provided coverage "if a claim is . . . brought against any insured for damages because of bodily injuries. . . ." (Internal quotation marks omitted.) After receiving Watson's complaint, the plaintiff made a claim for coverage under his insurance policy,[1] which the defendant denied. Thereafter, the plaintiff brought a two count amended complaint against the defendant, in which he (1) asserted a breach of contract claim based on the defendant's failure to provide him with coverage, and (2) sought a declaratory judgment that the terms of his insurance policy required the defendant to provide him with a legal defense and indemnity. Both parties then filed motions for summary judgment. The court granted the defendant's motion for summary judgment in its entirety and denied the plaintiff's motion. This appeal followed.

Before addressing the merits of the plaintiff's claim, we set forth the applicable standards of review. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant . . . summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d

1 (2018).

Our standard of review for interpreting insurance policies is also well settled. The construction of an insurance policy presents a question of law that we review de novo. *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 333 Conn. 343, 364, 216 A.3d 629 (2019). Insurance policies are interpreted based on the same rules that govern the interpretation of contracts. *New London County Mutual Ins. Co.* v. *Zachem*, 145 Conn. App. 160, 164, 74 A.3d 525 (2013). In accordance with those rules, "[t]he determinative question is the intent of the parties . . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured . . . ." (Internal quotation marks omitted.) Id., 164–65.

The plaintiff claims that, under the terms of his insurance policy, the defendant has a duty to defend and a duty to indemnify him in Watson's legal action. We disagree.

An insurer's duty to defend "is determined by reference to the allegations contained in the [underlying] complaint." (Internal quotation marks omitted.) *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 687, 846 A.2d 849 (2004). The duty to defend "does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether [the complaint] stated facts which bring the injury within the coverage." (Internal quotation marks omitted.) *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 712, 826 A.2d 107 (2003). "If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Internal quotation marks omitted.) *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000). An insurer's duty to defend is broader in scope than its duty to indemnify. *DaCruz* v. *State Farm Fire & Casualty Co.*, supra, 688. Accordingly, when an insurer does not have a duty to defend, it also will not have a duty to indemnify. Id.

Watson's three count complaint against the plaintiff alleges invasion of privacy (count one), intentional infliction of emotional distress (count two), and negli-

gent infliction of emotional distress (count three). Only the third count, negligent infliction of emotional distress, has any basis for coverage under the plaintiff's insurance policy.[2] The question before us, then, is whether the third count alleges a claim for which the plaintiff is entitled to insurance coverage. We conclude that it does not.

The plaintiff's insurance policy provides liability coverage, including a legal defense and indemnity, "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury . . . ." (Internal quotation marks omitted.) The policy defines "bodily injury" as "physical injury, sickness or disease . . . ." The policy further states that "bodily injury" does not include "mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury." On the basis of this language, the plaintiff's policy must be read as providing coverage only for damages that result from bodily injury. Bodily injuries, including mental injuries that arise out of physical injuries and physical injuries that arise out of mental injuries, are covered under the policy. Mental injuries alone, however, will not trigger coverage.

In the underlying complaint, Watson never alleged that a bodily injury occurred. Although count three of Watson's complaint alleged that she suffered "emotional distress so severe that it *could* cause physical illness"; (emphasis added); such a claim does not allege that she actually experienced a physical injury. Count three alleges instead that Watson suffered only emotional injuries. Such an allegation is insufficient for coverage under the plaintiff's policy. As previously explained, there is no coverage under the plain language of the policy for purely mental injuries, such as emotional distress. The policy also cannot be read to provide coverage for mental injuries that are so severe that they could, but have not yet, resulted in bodily injury.

We are unpersuaded by the plaintiff's argument that Watson's allegation that she could suffer from a physical injury "is sufficient, even [if] only slightly so, to lead the court to conclude that a bodily injury is alleged to have been sustained by the claimant." To prevail on a claim of negligent infliction of emotional distress, the plaintiff is required to prove that his or her emotional distress was "severe enough that it might result in illness or bodily harm . . . ." *Hall* v. *Bergman*, 296 Conn. 169, 182 n.8, 994 A.2d 666 (2010). Accordingly, the phrase "could cause physical illness" included in Watson's complaint was necessary to meet the pleading requirements for a claim of negligent infliction of emotional distress. Actual physical illness or injury is not necessary for such a claim and Watson's complaint pleads no such illness or injury. Thus, this wording

alone is not sufficient to establish that a physical injury occurred and triggered the defendant's duty to defend.

We are also unconvinced by the plaintiff's argument that public policy interests require us to conclude that his insurance policy provides coverage for purely mental injuries. Because his policy explicitly excludes such injuries from the definition of bodily injury, we are bound by that plain language and cannot read the policy differently to account for public policy considerations. See *Karas* v. *Liberty Ins. Corp.*, 335 Conn. 62, 109, 228 A.3d 1012 (2019) (construing insurance policy in accordance with its plain language despite compelling policy interests to contrary).

Therefore, because Watson's complaint does not allege a bodily injury, the plaintiff is not entitled to coverage under his insurance policy. Accordingly, the defendant has neither a duty to defend nor a duty to indemnify the plaintiff, and the trial court did not err in rendering summary judgment in favor of the defendant.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At all relevant times during this case, the plaintiff's insurance policy was in full force and effect and the plaintiff was a named insured under the policy.

[2] The plaintiff concedes, and we agree, that his policy does not provide coverage for counts one and two because the policy excludes coverage for intentional conduct.

[3] This conclusion renders it unnecessary for us to consider the defendant's alternative ground for affirmance, namely, that the plaintiff's alleged acts under count three were intentional and that they, therefore, were excluded from coverage under the policy.